PHŒNIX COAL COMPANY, INC., Respondent, *v.* PENNSYLVANIA RAILROAD COMPANY, Appellant.

First Department, February 6, 1920.

Conversion — action against carrier for conversion of coal billed by mine owner to private consignees — defense that coal was taken by defendant under contract with mine owner — evidence — admissibility on behalf of defendant of rules and evidence to show that cars were requisitioned for fuel purposes and not commercial purposes — error in excluding evidence not cured by charge — refusal of offer of incompetent evidence where it could have been made competent.

Where in an action for the conversion of coal alleged to have been sold by the mine owner through the plaintiff, its sales agent, to various consignees to be shipped over the defendant's road, the defense interposed was that the defendant had a contract with the mine owner by which it obligated itself to furnish to the defendant so much of the product of its mine as the defendant might require, and that empty cars were delivered to the mine pursuant to that contract, and that when the cars were loaded the defendant took them pursuant to that contract, and the evidence showed that the manifest for each car was filled out by the mine owner to indicate that the car was for a private consignee but that the defendant's conductor changed each manifest so as to indicate that the coal was for the defendant and thereupon took possession of the coal and removed it, and there was a conflict in the evidence as to the nature of the contract existing between the defendant and the mine owner, it was error to refuse to permit the defendant to show its rules, required and approved by the Interstate Commerce Commission, by which the mine owner was obliged each day to specify the cars it required the following day, specifying separately

those required for fuel purposes and those required for commercial purposes, and that each of the cars in question was requisitioned by the mine owner for fuel purposes, showing that they were intended for the delivery of coal to the defendant, and that the mine owner would not have been entitled to as many cars if it had requisitioned them for commercial purposes.

The error in excluding the evidence was not corrected by the instructions of the court that if the jury found that the cars were requisitioned for fuel purposes there could be no recovery.

The judgment cannot be sustained on the theory that the evidence which the defendant intended to introduce in support of his offer was not competent in that the requisitions for cars which were offered were filled out by the defendant's representative on a telephonic communication from the mine owner, for the requisitions might have been made competent if the defendant had been permitted to make good his offer.

APPEAL by the defendant, Pennsylvania Railroad Company, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 8th day of May, 1919, upon the verdict of a jury, and also from an order entered in said clerk's office on the 12th day of May, 1919, denying defendant's motion for a new trial made upon the minutes, and also from an order entered in said clerk's office on the 5th day of May, 1919, denying defendant's motion to strike out an item of interest amounting to the sum of $1,433.60, added by the jury, under direction of the court, to the verdict as originally rendered.

*M. L. Fearey* of counsel [*S. C. Coleman* with him on the brief; *Burlingham, Veeder, Masten & Fearey*, attorneys], for the appellant.

*William L. Bowman*, for the respondent.

LAUGHLIN, J.:

The action is for the conversion of fifty-five carloads of coal alleged to have been shipped by the Howard Gas Coal Company from its mines at Saltsburgh, Penn., to various consignees, and the plaintiff has recovered for the entire amount. The plaintiff was incorporated on the 12th of March, 1917, and prior to the first of April of that year it entered into a contract with the Howard Gas Coal Company, which for

brevity will be referred to as the Coal Company, to act as its sales agent in certain territory. It thereupon procured orders for coal from customers and directed the Coal Company to ship the coal. It is claimed that the coal in question was consigned by the Coal Company to the customers of the plaintiff pursuant to said orders and that the defendant, as a common carrier, accepted the coal for shipment to the consignees and thereafter converted the coal to its own use. The first carload of the coal was delivered to the defendant on the 16th day of April, 1917, and the last of the coal, consisting of six carloads, was delivered to the defendant on the thirtieth day of the same month. The evidence shows that the defendant received the coal in question at the times specified and that it appropriated the same to its own use. The defendant furnished all the cars, and the transactions with respect to furnishing the empty cars and receiving them loaded were had between the Coal Company and the defendant. It does not appear that the defendant had any knowledge of the plaintiff's contract with the Coal Company or claim of interest until after most of the coal had been received and used by it.

The plaintiff undertook to cover any possible question with respect to its ownership of, or right to recover for, the coal by alleging in a first count that the specified shipments were made by the Coal Company for the account of the plaintiff, and in a second count assignments to it by the various consignees, and in the third count an assignment to it by the Coal Company. The theory of the defense was that the defendant had a contract with the Coal Company by which the latter was obligated to furnish to the defendant so much of the product of its mine as the defendant required, and that the empty cars were ordered by the Coal Company and delivered to it by the defendant pursuant to that contract, and that when the cars were loaded it took them under the contract.

The Coal Company had been in existence for about fifteen years and during that time had sold and delivered practically its entire output of coal to the defendant pursuant to contracts, the last of which was for the year ending on the 31st of March, 1917, and was for the delivery of from 100,000 to

125,000 tons. Prior to the last-mentioned date the defendant forwarded to the Coal Company a formal proposed contract. for the ensuing year, which the Coal Company refused to sign on account of the provision with respect to the price to be paid for the coal. Thereafter oral negotiations were conducted between the parties concerning a renewal of the contract which culminated in an interview on the 31st of March, 1917, between Mr. Patton, treasurer and general manager of the Coal Company, and Messrs. Phillippe and Porcher representing the defendant. According to the testimony of Messrs. Phillippe and Porcher, it was finally agreed at the interview that the Coal Company should continue to furnish coal to the defendant according to the terms of the proposed contract, which, however, was not to be signed, until further notice to the purchasing agent of the defendant, but on the express understanding that if the defendant paid a higher regional price for coal than that specified in the proposed contract, the Coal Company would be given the benefit thereof. Patton denied that it was so agreed and testified that he only agreed to continue to furnish the defendant " some coal " at the highest price it paid to others. The evidence shows that, without any further agreement between the parties, the Coal Company thereafter and prior to the sixteenth of April delivered twenty-one carloads of coal to the defendant for its own use, and four carloads more between the sixteenth and twenty-seventh of April, making twenty-five carloads altogether. The regulations of the defendant, required and approved by the Interstate Commerce Commission, made it obligatory upon all shippers to specify, in requisitioning empty cars for coal, whether the car was required for the shipment of coal for *commercial purposes*, in which case it was classified as an *unassigned* car, or for furnishing coal to a carrier for *fuel supply*, in which case it was classified as an *assigned* car, and these requirements were observed with respect to the said twenty-five cars and all others. In shipping a carload of coal for commercial purposes it was not the custom of the shipper to give a formal shipping order, or for the carrier to issue a bill of lading; but the destination of the coal and the consignee were indicated on a card known as a manifest and left in a box on the premises of the Coal Company in the

vicinity of the loaded cars for the freight conductor of the defendant who was to take the car, and a like practice existed with respect to cars for railroad fuel purposes.   The defendant was notified in the customary manner that the cars in question which had been delivered to the Coal Company for loading, had been loaded and were ready for delivery; but when the conductor of the defendant called for the cars he found in each instance that the manifest, instead of being filled out indicating that the coal was for the defendant, was filled out indicating that it was intended for the private consignees, whom the plaintiff now claims to represent, and the conductor in each instance thereupon changed the manifest so as to indicate that the coal was for the defendant and thereupon took possession of the coal and removed it, and after the cars were weighed the Coal Company was notified of the weight of the coal and that the defendant had taken it for its own use.   On the seventeenth of April, when the defendant's freight conductor called for a carload of coal — evidently the second of those here in question — and found that the manifest indicated that it was for a private consignee and was changing it to defendant, Mr. Patton, the Coal Company's treasurer and general manager, was present, and the conductor testified that in explaining to Patton the reason for changing the manifest he stated that orders had been issued by the defendant that there were to be so many cars of coal for the defendant moved from that mine every day, and that if they were not so indicated on the manifest he had been instructed to reconsign it.   One Barnes, the car distributor of the Conemaugh division of the defendant, testified that the same day or the next morning Patton asked him over the telephone about the reconsignment of the cars of coal, and that he informed Patton that, according to the rules and regulations of the defendant and of the Interstate Commerce Commission, the *assigned* cars placed for a special purpose had to be consigned accordingly and, if they were not, then that they had to be reconsigned, and that his instructions were that the consignments had to be in accordance with the placement of cars, and that if any change was to be made in such orders of the defendant it would have to come from someone higher in authority.   Patton was not asked con-

cerning the telephonic conversation testified to by Barnes, but he admitted having had a conversation with the conductor and said that the latter told him he was going to take the coal for that day for the defendant, and that he protested as follows: " We have no contract and you have no right to take that coal;" and then " just let the matter stand and walked away."

It appears that during the month of April and prior to the sixteenth thereof the defendant accepted and shipped one carload of coal delivered to it by the Coal Company for a private consignee. The defendant offered to show its rules, required and approved by the Interstate Commerce Commission, by which the Coal Company was obliged each day to specify the cars it required for the following day, specifying separately those required for *fuel purposes* and those required for *commercial purposes*, and that each of the cars in question was requisitioned by the Coal Company for *fuel purposes*, showing that they were intended for the delivery of coal to the defendant, and that the Coal Company, owing to the scarcity of cars which the carrier was obliged to deliver proportionately to shippers, thereby obtained a greater number of cars and a greater outlet for its coal than it would have received or had, or would have been entitled to receive or have, had it specified that the cars were required for commercial purposes. The court entertained the offer of the proof without requiring questions to be propounded to prove the facts in the ordinary manner, and excluded the evidence on the grounds that no such defense was pleaded, that it was immaterial, and that the only question in the case was whether or not there was a conversion; and appellant duly excepted. The court consistently adhered to that ruling throughout the trial, notwithstanding the fact that it was expressly urged by counsel for the defendant that the evidence was material on the questions of fact as to whether the contract between the defendant and the Coal Company was as claimed by the defendant or as claimed by the Coal Company, and as to whether the defendant was guilty of conversion, it being claimed by counsel for the defendant that his client could not be held liable for conversion if the agreement with respect to the sale and delivery of coal by the Coal Company to

the defendant was as claimed by the defendant and as the jury would have been warranted in finding, and the cars were requisitioned for the purpose of furnishing coal to the defendant, as the jury might have found the offered proof had been received. Notwithstanding the exclusion of this evidence, the court, on some general evidence elicited on cross-examination of one of the defendant's witnesses, to the effect that defendant accepted for shipment and shipped to a private consignee one carload of coal on April third which was during this period, left it for the jury to say whether or not the cars were requisitioned by the Coal Company for fuel purposes, and instructed the jury that if they were requisitioned for such purposes there could be no recovery. I am of the opinion that these instructions correctly stated the law of the case (*Springfield Light, Heat & Power Co.* v. *Norfolk & Western Ry. Co.*, 260 Fed. Rep. 254), but they did not correct the error in the exclusion of the material evidence, to which reference has been made, bearing on that issue. The learned counsel for the plaintiff endeavors to sustain the judgment on the theory that the evidence which the defendant *intended* to offer would not have been competent. That argument is based primarily on the fact that the requisitions for the cars made by the Coal Company were telephonic communications, and that blank forms were filled out by a representative of the defendant in accordance therewith, which were offered in evidence. These requisitions when offered had not been made competent, but if the court had not excluded evidence of facts as immaterial, they might have been made competent, and would have been competent if the recollection of the employee who filled them out would not have enabled him to testify to the facts and his recollection could not be refreshed thereby so as to enable him to testify to the facts. The broad ruling of the court precluded the defendant from proceeding further to develop this evidence either by the testimony of the witness or, if he could not recall the facts, then by the introduction of the requisitions on proof that they were filled out by him truthfully and accurately at the time. Points are also made as to other alleged erroneous rulings of the trial court, but as they may not arise on a new trial, it is unnecessary to express an opinion thereon.

It follows that the judgment and orders should be reversed and a new trial granted, with costs to the appellant to abide the event.

SMITH, MERRELL and PHILBIN, JJ. concur

Judgment and orders reversed and new trial ordered, with costs to appellant to abide event.